THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| NEVADA STAR RESOURCE CORP. (U.S.) , ET AL., | |
| | Case No. 2:12CV00392 DS |
| Plaintiffs, | |
| vs. | MEMORANDUM DECISION AND ORDER ADDRESSING MOTION TO DISMISS (DOC. # 8) |
| ROBERT ANGRISANO, ET AL., | |
| Defendants. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**I.  INTRODUCTION**

Pursuant to Fed. R. Civ. P. 12(b)(2) and (3), Defendants, who are all residents of Washington, move the court to dismiss this case for lack of personal jurisdiction, or alternatively, to transfer venue to the Western District of Washington. (Doc. #8).

"The essence of Plaintiffs' suit is that Defendants have violated fiduciary duties and interfered with Plaintiffs' economic relations (among other improprieties) by improperly claiming interests in, and rights to proceeds from, mining operations in Beaver County, Utah." Am. Compl. ¶10.

In their Amended Complaint, Plaintiffs allege the following. Plaintiff Nevada Star Resource Corp. (U.S.) ("NSRC") is a Nevada Corporation with its principal place of business in Ontario, Canada.  During the 1990s, NSRC was a wholly owned subsidiary of

Nevada Star Resource Corp., a corporation organized and existing under the laws of British Columbia, Canada, and later under the laws of Yukon, Canada (the "Yukon Entity"). The two companies were operated essentially as one and are referred to jointly hereafter as NSRC. NSRC acquired rights and interest in mining claims and leases located in Beaver County, Utah. In March of 2007, NSRC became a wholly owned subsidiary of Plaintiff Pure Nickel, Inc. ("Pure Nickel") a Canadian Corporation with its principal place of business in Ontario, Canada.

Defendant Angrisano, during various times, served as an officer and director of NSRC and Pure Nickel. Defendant Monty D. Moore ("Moore"), during various times, served as an officer and/or director or NSRC. Regarding Defendant Monty L. Moore, Plaintiffs allege that he is the son of Moore, and that in May of 2002, he was appointed as an alternate director of the Yukon Entity. Regarding Defendant Nicholson, Plaintiffs allege that he "was involved with NSRC in some unspecified role prior to the time that it became a wholly owned subsidiary of Pure Nickel. Other Defendants referred to Nicholson as an affiliate of NSRC. The full nature and extent of his involvement with NSRC and the Yukon Entity is currently unknown to Plaintiffs." Am. Compl. ¶ 19.

In May of 1998, NSRC entered into a Purchase and Sale Agreement with Grand Central Silver Mines, Inc. ("Grand Central"), a Utah corporation with headquarters and operations in Utah, and

Dotson Exploration Company ("Dotson"), a Nevada Corporation with headquarters and operations in Utah, whereby NSRC agreed to purchase certain mining interest in Beaver County, Utah, in exchange for 12% of the net profits from the ores and minerals produced from certain Utah properties controlled by NSRC (the "NPI"). The assignment was signed by Moore as President of NSRC.

In February of 1999, Angrisano, Nicholson and either Moore or Monty L. Moore[1] took an assignment of the NPI (the "Assignment") from Grand Central and Dotson in exchange for $40,000. The Assignment was recorded in Beaver County, Utah.

In January of 2002, NSRC entered into an Option to Purchase with Western Utah Copper Company ("WUCC"), a Utah corporation, whereby WUCC was granted an option to purchase certain property interests in Beaver County, Utah, previously acquired by NSRC. The Option to Purchase was signed by Moore both in his individual capacity and as President of NSRC. On June 17, 2002, WUCC gave notice of its intent to exercise its option.

NSRC and WUCC entered into an Agreement and NS Option (the "Agreement") effective July 23, 2002, whereby WUCC agreed to pay NSRC specified production royalties as defined, and granted NSRC the option to acquire the subject Beaver County, Utah properties

---

[1] The Assignment does not specify whether the "Monty Moore" who was one of the named assignees was Moore, or his son Monty L. Moore.

conveyed, in the event WUCC failed to put the properties into production.

In a November 1, 2008 letter, WUCC claimed that it had achieved production and enclosed two checks payable to NSRC. The two checks were never cashed. Notwithstanding WUCC's assertion, NSRC had serious doubts that WUCC had achieved production.

In an action commenced June 6, 2009, NSRC sued WUCC in this court regarding whether NSRC was entitled to exercise its option under the Agreement to reacquire the properties covered by the Agreement.  WUCC subsequently filed a voluntary petition in bankruptcy.

CS Mining, LLC, and Skye Mineral Partners, LLC (jointly "CS Mining"), thereafter acquired substantially all of the assets of WUCC.

In November of 2011, CS Mining and Pure Nickel entered into a Settlement and Release Agreement, which, among other things, provided for the termination of the litigation between NSRC and WUCC, for NSRC to transfer certain property interests to CS Mining, and for NSRC to relinquish any claim or right to reacquire the properties covered by the Agreement.

Following execution of the Agreement, Angrisano claimed in an email to the Yukon Entity's corporate secretary that at the time that NSRC "did the deal" with WUCC, Angrisano, Monty L. Moore and Nicholson agreed to change their claimed NPI to a 12% net profits

interest "in only the money that [NSRC] received as a result of the agreement with [WUCC]." Angrisano would make the same assertion on multiple occasions during Pure Nickel board meetings.

Consistent with Angrisano's assertion that the NPI had been converted to a 12% nets profits interest in the monies that NSRC was entitled to receive pursuant to the Agreement, in a letter dated December 17, 2008, from Mark Dotson, President and CEO of WUCC, to "Monty Moore", WUCC acknowledged the 12% interest and enclosed a check payable to "Monty Moore" in the amount of $3,000 based on the allegedly modified NPI.

Plaintiffs seek declaratory relief, and claim breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, equitable estoppel, and intentional interference with contractual relations.

## II. DISCUSSION

### A. Jurisdiction

Plaintiffs bear the burden of establishing personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.* 514 F.3d 1063, 1069 (10th Cir. 2008). Where "there has been no evidentiary hearing, as in this case, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists. *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009)(internal quotation marks and citations

omitted). "All factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing." *Id*.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). In Utah, jurisdiction over nonresident defendants can be either general (doing business concept) or specific (arising out of or related to enumerated activities). *STV Int'l Mktg v. Cannondale Corp.*, 750 F. Supp. 1070, 1073 (D. Utah 1990); *Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*, 578 P.2d 850, 853 n.6 (Utah 1978).

### 1. Specific Jurisdiction

Plaintiffs assert that all Defendants are subject to specific personal jurisdiction in Utah.[2] In determining jurisdiction, Utah employs a two part test.

> The proper test to be applied in determining whether personal jurisdiction exists over a nonresident defendant involves two considerations. First, the court must assess whether Utah law confers personal jurisdiction over the nonresident defendant. This means that a court may rely

---

[2] Plaintiffs also contend that Moore is subject to general jurisdiction due to his continuous and substantial activity in Utah. Because the Court finds that it has specific jurisdiction over Moore, it will not address Plaintiffs' claim of general jurisdiction.

6

>on any Utah statute affording it personal jurisdiction, not just Utah's long-arm statute. Second, assuming Utah law confers personal jurisdiction over the nonresident defendant, the court must assess whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment.

*State el rel. W.A.*, 63 P.3d 607, 612 (Utah 2002), *cert. denied*, 538 U.S. 1035 (2003).

### a. statutory basis for jurisdiction

Absent any other relevant statute, the Court looks to Utah's long-arm statute. That statute requires that a defendant have performed one or more of several enumerated acts within the State of Utah for it to apply. *See* Utah Code Ann. § 78B-3-205.

Here, Plaintiffs' assert that "Defendants contracted with and paid money to companies operating in Utah for a Net profits interest (the "NPI") in mining properties located in Beaver County, Utah" and that "Defendants took numerous actions directed at Utah to protect and promote their NPI." Mem. Opp'n at 2. Plaintiffs also assert that their claims arise directly out of Defendants' contacts with Utah.

Utah's long-arm statute provides in relevant part as follows.

>[A]ny person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state **as to any claim arising out of or related to**:
>
>(1) the transaction of any business with the state;
>. . .
>(4) the ownership, use, or possession of any real

>           estate situated in this state;
>                    . . .

Utah Code Ann. § 78B-3-205 (emphasis added).[3] Plaintiffs' allegations clearly arise out of or relate to claimed mining interests and operations which Plaintiffs assert are property interests in Utah, and which they allege Defendants contracted with Grand Central and Dotson to acquire. In the Court's opinion, Plaintiffs' allegations are sufficient to satisfy Utah's long-arm statute.[4]

---

[3] Plaintiffs also assert that their claims arise out of the causing of injury in Utah.

[4] See *Pohl, Inc. of America v. Webelhuth*, 201 P.3d 944, 951-952 (Utah 2008)(quotation marks and citations omitted), noting that allegations that defendants caused one of the enumerated acts and that the claims arise out of that act, satisfies Utah's long-arm statute.
>      We acknowledge the analytical difficulty of
> distinguishing between the satisfaction of minimum
> contacts in the due process analysis and the satisfaction
> of the long-arm statute. For this reason, we often
> assume the application of the statute - and go straight
> to the due process issue. Nevertheless, it is important
> to articulate whether the limitation on jurisdiction
> stems from the breadth of the long-arm statute or whether
> it stems from the principles of due process. Contrary to
> the court of appeals' conclusion, the plain language of
> the long-arm statute does not exclude financial injuries
> caused by tortious actions, and any such limitation must
> come from the Due Process Clause, which we analyze below.
>      Thus, to satisfy the long-arm statute requirement,
> a plaintiff must allege only that the defendants caused
> [i.e.] a tortious injury in Utah and that the plaintiff's
> claims arise out of the tortious injury.

**b. due process**

The focus, therefore, is whether subjecting Defendants to suit in Utah comports with due process.

> A two-part test exists to guide the court in this determination. First, the court must find that certain "'minimum contacts'" exist between the State of Utah and [defendant] . . . . Second, if the court finds that minimum contacts exist, exercising jurisdiction over [defendant] must "not offend 'traditional notions of fair play and substantial justice.'"

*Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F. Supp. 608, 614 (D. Utah 1995)(citations omitted).

### 1. Minimum Contacts

A federal court sitting in diversity 'may exercise personal jurisdiction over a nonresident defendant only so long as there exists "minimum contacts" between the defendant and the forum State.'" *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

"The minimum contacts necessary for specific personal jurisdiction may be established where the defendant has purposefully directed its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Trujillo v. Williams*, 465 F.3d 1210, 1218 (10th Cir. 2006)(internal quotations and citations omitted).

**a. Defendants Moore & Angrisano**

Plaintiffs assert that "the repeated contacts with Utah by Moore and Angrisano while serving as officers and directors of the Yukon Entity and NSRC dictate that the Court has personal jurisdiction in this case." Mem. Opp'n at 16. Plaintiffs also assert that their claims arise directly out of Defendants' contacts with Utah.

Defendants Angrisano and Moore urge that Plaintiffs have failed to establish that they have transacted any business within Utah and that they do not have the minimum contacts with Utah necessary for the Court to exercise jurisdiction over them. Relying on *Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987), they contend that Plaintiffs must establish jurisdiction based on their personal contacts with Utah, and not on the acts and contacts carried out solely in a corporate capacity.

Defendants reliance on *Ten Mile* and the corporate shield doctrine is misplaced.

> As this court recently explained in *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009), "*Ten Mile* held that the [district] court [in that case] lacked jurisdiction over an 'executive committee' of a corporation for the contacts made by the corporation," based on "[t]he rationale ... that an officer in a corporation is not personally liable for all the acts of the corporation...." In other words, "an officer of a corporation is 'not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful

10

> activity.'" Rusakiewicz, at 1103 .... In the instant case, the record firmly establishes that [defendant] Lonny Bowers participated in the wrongful activity, and thus the corporate shield doctrine has no applicability to him.

*Clearone Communications, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). As was the case in *Bowers*, the pleadings submitted by Plaintiffs allege that Moore and Angrisano participated in the alleged wrongful activity. Therefore, the corporate shield doctrine is inapplicable.

Under the totality of allegations and assertions, the Court is satisfied that Plaintiff's have made a prima facie showing that specific jurisdiction exists as to Angrisano and Moore. *See, e.g.,* Am. Compl. ¶¶ 16-51; Decl. of David R. McPherson; and, Decl. of Mark Dotson.

### b. all Defendants

Plaintiffs also assert that "[a]ll of the Defendants were involved in reaching into Utah to enter into a contract with companies operating in Utah and pay them money in exchange for an NPI in mining interests and operations in Beaver County, Utah", and that Defendants "took these actions as part of a conspiracy to profit at the expense of NSRC and/or the Yukon entity in violation of the fiduciary duties owed by Angrisano and Moore." Mem. Opp'n at 19. Therefore, Plaintiffs assert that the contacts of each Defendant are imputed to the other Defendants. *See Melea Ltd.* v. Jawer SA, 511 F.3d 1060, 1070 (10th Cir. 2007)("a co-conspirator's

11

presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum").

To base personal jurisdiction on allegations of conspiracy, Plaintiffs bear "the burden of clearly alleging facts that demonstrate the existence of a conspiracy." *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 955 (Utah 2008). Plaintiffs must offer more than bare allegations that a conspiracy existed and must allege facts, beyond conclusory allegations and general averments, that would support a prima facie showing of conspiracy.[5]  *Id*.

In general and conclusory fashion, Plaintiffs allege that the "Defendants agreed to work together to acquire an NPI" that Defendants "agreed upon a plan" and "executed that plan by paying $40,000 to acquire the NPI" Am. Compl. ¶ 103, see also ¶ 107. Plaintiffs' further allege "that Defendants took affirmative steps in furtherance of the conspiracy, including paying money for the NPI, agreeing to the Assignment of the NPI, and participating in

---

[5] In Utah, civil conspiracy requires proof of five elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."  Pohl, Inc., 201 P.3d at 954-55.

demanding proceeds from mining operations in Utah pursuant to the NPI." Id. ¶ 106.

After reviewing the Amended Complaint and documentation submitted, the Court concludes that Plaintiffs allegations of conspiracy are conclusory and generally devoid of facts that would support a claim of conspiracy. Plaintiffs, therefore, have failed in their burden of establishing that jurisdiction exists as to all Defendants, including Nicholson and Monty L. Moore, based on allegations of conspiracy.[6]

### 2. Fairness Considerations

Having found minimum contacts as to Moore and Angrisano, for federal due process to be satisfied the Court must still find that "[t]he defendant's contacts with the forum state must also be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Far West Capital, Inc.*, 46 F.3d at 1074 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Factors to be considered include "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies'". *Burger*

---

[6] Plaintiffs' also state that Nicholson in a letter dated September 14, 2011, to NSRC's attorney in Salt Lake City, asserted that he had rights to a 1/3 share of the NPI. *See* Decl. of Derek Langton, ¶ 5. The Court is not persuaded that this act satisfies the minimum contacts requirement as to Nicholson.

*King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292). If the Court finds that there have been minimum contacts, however, "the burden is on the defendant to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Rusakiewicz*, 556 F.3d at 1102 (quoting *Burger King*, 471 U.S. at 477). "Such cases are rare." *Id.*

The court concludes that the assertion of jurisdiction over Angrisano and Moore under the facts presented would not be contrary to the notions of fair play and substantial justice. Angrisano and Moore's alleged contacts with Utah were voluntary and undertaken with a profit motive. While it can be presumed that it would be more convenient for Moore and Angrisano to respond to Plaintiffs' claims in Washington, other than conclusory claims of financial and personal hardship, no specific evidence has been provided that suggests an undue burden by requiring them to litigate in Utah. And as Plaintiffs' note, "[o]utside of Defendants, many witnesses will likely be from Utah, such as Mark Dotson (who is located in Utah) and the other parties that negotiated and/or entered into the Assignment, David Leta, the Utah attorney for CS Mining who was contacted by Angrisano, and Ted Posey, a principal of Cortex Mining located in Utah who is likely familiar with representations Moore and/or Angrisano made regarding the NPI." Mem. Opp'n at 26. Moreover, because NSRC's mining interests are located in Utah, it

14

would seem that Utah has an interest in maintaining this action in its forum. It appears to be uncontroverted that the characterization of the NPI will be a matter of Utah law. Plaintiffs have selected Utah as their forum of choice to seek relief, and Defendants have failed to articulate any persuasive reason why Washington would be a more efficient place to resolve this matter than would Utah.

### B. Venue

Defendants also urge that the case should be dismissed or transferred out of Utah under 28 U.S.C. § 1406(a). As Plaintiffs note, that statute is applicable only if venue is inappropriate in the first place. Civil actions may be brought in the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. §1391(b)(2).

As a recap of events giving rise to their claims, Plaintiffs allege that "(i)Defendants contracted with companies operating in Utah to obtain the NPI and usurp Plaintiffs' corporate opportunity; (ii)Defendants accepted money purportedly from mining operations in Utah; (iii)Defendants sent communications to Plaintiffs' attorney in Utah claiming rights under the NPI; and (iv)Defendants sent communications to CS Mining's attorney in Utah claiming rights under the NPI." Mem. Opp'n at 29-30.

The Court is satisfied that venue in Utah is appropriate.

**C.   28 U.S.C. § 1404(a) Transfer**

In the alternative, Defendants request that this case be transferred to the Western District of Washington "[f]or the convenience of parties and witnesses, in the interest of justice ...." 28 U.S.C. § 1404(a). In evaluating a motion to transfer, the court considers the following.

> "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed.2d 22 (1988)(quoting *Van Dusen*, 376 U.S. at 622, 84 S. Ct. at 812).
>
>> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.
>
> *Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir. 1967).

*Chrysler Credit Corp. v. Country Chrysler Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). As master of the complaint, deference is given to plaintiff's forum selection. *Frontier Federal Sav. & Loan Ass'n v. National Hotel Corp.*, 675 F. Supp. 1293, 1301 (D. Utah 1987).

"The defendants' burden is heavy, and unless the circumstances of the case weigh heavily in favor of the transfer, the plaintiff's choice should not be disturbed." Id. *See also, Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010)(quotation and other marks omitted)("[t]o demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary").

In support of their position that venue should be transferred, Defendants simply assert that litigating in Utah would be a hardship on them and their families because they will be witnesses and live in western Washington, and because relevant documents are located in Washington and Canada.

The Court has previously concluded that Defendants claim of burden on them and their families is supported by nothing more than their conclusory statements. Defendants do not identify any witnesses beyond themselves and possibly Plaintiffs' representatives. Additionally, Defendants fail to elaborate why the location of documents creates any hardship for them given modern means of communication. The Court, therefore, concludes

17

that Defendants have failed in their burden of establishing that the circumstances of this case weigh in favor of transfer.[7]

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction is denied as to Angrisano and Moore, but granted as to Monty L. Moore and Nicholson. Defendants' alternative motion for change of venue is denied.

IT IS SO ORDERED.

DATED this 4th day of October, 2012.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[7] Having so concluded, Plaintiffs, who have not addressed this issue in their pleadings, may wish to re-examine their choice of venue in Utah in the context of whether, if they prevail, they can achieve complete relief without the presence of Nicholson and Monty L. Moore.